UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JAMES CARTER,

                    Petitioner,

      - against -

                            **MEMORANDUM & ORDER**
                                19-CV-5364 (PKC)

LEROY FIELDS, Supt.,

                    Respondent.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Petitioner James Carter, appearing *pro se*,[1] petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for Criminal Sale of a Controlled Substance in the Second Degree, N.Y. Penal Law § 220.41[1], and Criminal Possession of a Controlled Substance in the Third Degree, N.Y. Penal Law § 220.16[1]. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

I.    **Facts**[2]

      On September 4, 2012, Petitioner James Carter and Kevin Leland were arrested for a drug

---

[1] Because Petitioner is *pro se*, the Court liberally construes his petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted). However, the Court notes that it "need not act as an advocate for" Petitioner. *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

[2] Because Petitioner was convicted, the Court construes the facts in the light most favorable to Respondent. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial." (citations omitted)); *Cruz v. Colvin*, No. 17-CV-3757 (JFB), 2019 WL 3817136, at *12 (E.D.N.Y. Aug. 14, 2019) (citing, *inter alia*, *Jackson* and *Ponnapula*).

transaction. (Trial Transcript ("Tr."), Dkt. 11-1, at ECF[3] 603, 628–30.) Police Officer David Teta and Sergeant Bradley Beamer went to the area of Beach 90th Street and Rockaway Freeway in Queens, following a complaint regarding suspicious activity. (*Id.* at ECF 486–87, 562.) Parked in an unmarked police car at the corner of Beach 90th Street and Rockaway Freeway, Officer Teta and Sergeant Beamer observed Leland exiting a white rental vehicle and subsequently looking in the direction of their car. (*Id.* at ECF 563, 567–70.) Officer Teta recognized Leland from "prior arrests involving drugs and domestic violence arrests." (*Id.* at ECF 61, 569.) Officer Teta thought that Leland recognized the officers. (*Id.* at ECF 571.) Leland quickly made his way into the building in front of which he had parked. (*Id.*) Because they believed Leland had recognized them, Officer Teta and Sergeant Beamer returned to the precinct, and then set out again for the same location outside Leland's home in separate cars—the sergeant in an unmarked police car with two other officers, and Officer Teta in his own car. (*Id.* at ECF 571–72.) Officer Teta saw Leland leave his home after a few minutes; Leland entered his vehicle and drove north on Beach 90th Street. (*Id.* at ECF 572–73.) Officer Teta described Leland's movements to Sergeant Beamer over point-to-point radio, and the sergeant subsequently informed Teta that Leland was headed in Teta's direction. (*Id.* at ECF 573–74.) Officer Teta parked on Beach 88th Street, anticipating that Leland would drive southbound on Beach 89th Street. (*Id.* at ECF 574.) Officer Teta then observed Leland park his car behind a gold SUV. (*Id.* at ECF 576, 578, 581.) Leland exited his vehicle and met with Petitioner, who exited the SUV. (*Id.* at ECF 587–88.) Following a verbal exchange between Leland and Petitioner, Leland handed Petitioner a "wad of money" from his right pocket, and Petitioner gave Leland an orange pill bottle, which Leland placed in the pocket of his cargo

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

pants.  (*Id.* at ECF 588–89.)  Officer Teta informed Sergeant Beamer that he had observed what he thought was a drug transaction, and the sergeant drove his unmarked vehicle to the scene with the other police officers.  (*Id.* at ECF 589–90.)  Upon arrival, the police officers stopped Leland and Petitioner, and proceeded to search them.  (*Id*. at ECF 590.)  Officer Teta retrieved from Leland's pants pocket the orange pill bottle, which contained 150 oxycodone pills.  (*Id.* at ECF 590, 592.)  Officer Teta then searched Petitioner and found $1,700 in cash.  (*Id.* at ECF 591.) Leland and Petitioner were placed in handcuffs, and Officer Teta approached Petitioner's vehicle, in which Petitioner's wife was seated in the passenger seat.  (*Id.* at ECF 64.)  Officer Teta asked Petitioner's wife to exit the vehicle and then searched the vehicle's front seat area.  (*Id.*)  Officer Teta recovered from Petitioner's vehicle a receipt for oxycodone pills purchased in the amount of $250 from Russo's Pharmacy.  (*Id.* at ECF 600–02.)

Both Petitioner and Leland were arrested and brought to the precinct.  (*Id.* at ECF 628.) Upon returning to the precinct, Officer Teta informed Petitioner that he was under arrest for criminal sale of a controlled substance, and Petitioner said, "if you let me go, I will give you a bigger fish."  (*Id.* at ECF 602–03.)  Meanwhile, Leland provided a post-arrest statement to the officers, in which Leland stated, in part and substance, that he took 180 oxycodone pills per month for back, shoulder, knee, and neck problems, and that he had a prescription for the drug.  (Record ("R."), Dkt. 11, at 116, 309.)  Leland also told the officers that, despite having 150 pills of oxycodone in his "own bottle" at the time of the arrest, he was always looking for more.  (*Id.*)

The grand jury indicted Petitioner and Leland under Queens County Indictment Number N10527/12, for (1) criminal sale of a controlled substance in the second degree, in violation of N.Y. Penal Law § 220.41[1]; (2) criminal possession of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.16[1]; (3) criminal diversion of prescription medications and

prescriptions in the third degree, in violation of N.Y. Penal Law § 178.15[1]; and (4) criminal diversion of prescription medications and prescriptions in the fourth degree, in violation of N.Y. Penal Law § 178.10.  (R. at 304, 559–61.)  Leland was also indicted on charges of criminal sale of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.16[12], criminal diversion of prescription medications and prescriptions in the third degree in violation of N.Y. Penal Law § 178.15[1], and criminal diversion of prescription medications and prescriptions in the fourth degree, in violation of N.Y. Penal Law § 178.10.  (*Id.* at 304.)

## II.     Prior Convictions

In September 1988, Petitioner pled guilty to attempted robbery in the second degree.  (Tr., at ECF 892.)  He was sentenced to an indeterminate term of imprisonment of up to four years, and was released on parole in 1989.  (R. at 568–69.)  Less than two years later, in June 1991, Petitioner was convicted after a jury trial of murder in the second degree, robbery in the first degree, and grand larceny in the third and fourth degrees, and a month later was sentenced to 20 years imprisonment to life.  (*Id.* at 563–66.)  Petitioner was released on parole on July 28, 2010.  (*Id.* at 567.)

## III.    State Court Proceedings

In connection with Petitioner's prosecution on the prescription medication charges, Justice Joseph A. Zayas of New York State Supreme Court held a *Dunaway/Mapp/Huntley*[4] hearing on April 18, 2013 to determine whether, *inter alia*, there was probable cause for Petitioner and Leland's arrest and whether their property was unconstitutionally seized.  (*See* Tr., at ECF 10–67.)

---

[4] Such a hearing is held pursuant to: "(1) *Mapp v. Ohio*, 367 U.S. 643 (1961), to determine whether physical evidence sought to be used against Petitioner was obtained illegally; (2) *Dunaway v. New York*, 442 U.S. 200 (1979), to determine whether there was probable cause for Petitioner's arrest; and (3) *People v. Huntley*, 15 N.Y.2d 72 (1965), to determine whether any statements made by Petitioner should be suppressed."  *McKelvey v. Bradt*, No. 13-CV-3527 (CM) (DF), 2016 WL 3681457, at *4 n.3 (S.D.N.Y. July 6, 2016).

At the conclusion of the hearing, Justice Zayas found, *inter alia*, that Petitioner's arrest was supported by probable cause, that the recovery of Petitioner's money was the lawful result of a search incident to arrest, that the search of Petitioner's vehicle was appropriate for safety reasons because a third person (Petitioner's wife) remained in the vehicle at the time of Petitioner and Leland's arrest, and that suppression of Petitioner's statement to Officer Teta following the arrest was not warranted. (*Id.* at ECF 63–66.)

Petitioner's jury trial was held over the course of nine days, between June 27, 2013, and July 11, 2013, before Justice Charles Lopresto, New York Supreme Court, Queens County. (*Id.* at ECF 95–880.) At the trial, the prosecution presented the testimony of Officer Teta and Sergeant Beamer, both of whom testified to the circumstances of the arrest (*see id.* at ECF 554–695 (Teta testimony), 696–719 (Beamer testimony)), as well as an investigator with the New York State Department of Health Bureau of Narcotics Enforcement (*see id.* at ECF 495–530 (Brendan Vallely testimony)), the manager of one of the pharmacies from which Petitioner had obtained oxycodone pills (*see id.* at ECF 531–54 (Mordecai Rosen testimony)), and the chemist who tested these pills (*see id.* at ECF 721–44 (Amanda Goodwin testimony)). The prosecution also called Officer Pascale Denis, who testified to the deposit of the money seized in the arrest. (*Id.* at ECF 746–54.) Petitioner did not present a case. (*Id.* at ECF 758.)

The jury found Petitioner guilty of (1) criminal sale of a controlled substance in the second degree, and (2) criminal possession of a controlled substance in the third degree. (*Id.* at ECF 871.) The jury acquitted Petitioner of the two remaining counts, criminal diversion of prescription medications and prescriptions in the third and fourth degrees. (*Id.* at ECF 871–72.) On August 12, 2013, Petitioner was sentenced to concurrent determinate terms of ten years' imprisonment, to be followed by five years' post-release supervision, for both counts of conviction. (*Id.* at ECF

902–03.)  Justice Lopresto recommended that the sentence be concurrent to any parole violation found against Petitioner.  (*Id.* at ECF 903.)

## IV.    Procedural History

### A.    State Court Post-Trial Applications

Petitioner's post-trial litigation history is extensive.[5]  On November 13, 2013, Petitioner filed a motion to vacate the August 12, 2013 sentence because it incorrectly depended on Petitioner's conviction for murder in the second degree as a predicate violent felony offense.  (R. at 1.)  That motion was granted, and the August 12, 2013 sentence vacated.  (*Id.* at 10.)  On February 27, 2014, Petitioner was re-sentenced to two determinate sentences of 10 years imprisonment, followed by five years of post-release supervision, with a different past felony as the sentencing predicate.  (Tr., at ECF 910, 918.)  On March 25, 2014, Petitioner filed a motion for leave to appeal the trial court's decision on his resentencing in the New York Appellate Division, Second Judicial Department ("Appellate Division") (R. at 11–15), which was denied on May 30, 2014 (*id.* at 23).  On August 4, 2016, Petitioner moved *pro se* under New York Criminal Procedure Law ("NYCPL") 440.10 to vacate his conviction ("440 motion"), in New York Supreme Court, Queens County, alleging, *inter alia*, a "mixed[6] claim" of ineffective assistance of counsel. (R. at 24–63.)  That 440 motion was denied on January 19, 2017.  (*Id.* at 125–32.)  On February 15, 2017, Petitioner, acting *pro se*, sought leave to appeal the denial of his 440 motion.  (*Id.* at 134–47.)  The Appellate Division, Second Department denied that application on June 1, 2017.

---

[5] The Court's recitation of Petitioner's post-trial applications is not exhaustive, but rather focuses on those relevant to this Petition.

[6] In this context, a "mixed" claim is one based on matters both on and off the record that is properly raised via a 440 motion.  *See Anderson v. Lee*, No. 19-CV-4488 (BMC), 2020 WL 1682605, at *5 (E.D.N.Y. Apr. 7, 2020) (citing NYCPL § 440.10).

(*Id.* at 166.)  Petitioner applied for leave to appeal to the New York State Court of Appeals on July 1, 2017 (*id.* at 167–89), but that application was dismissed on October 2, 2017 because the Appellate Division's order was not appealable (*id.* at 192).

In October 2016, while Petitioner's *pro se* 440 motion was pending, Petitioner also filed a counseled direct appeal in the Appellate Division, arguing that (1) the trial court denied Petitioner his right to a fair trial by refusing to admit into evidence the written statement made by Leland after his arrest that was arguably exculpatory of Petitioner; (2) Petitioner was denied his right to a fair trial when the police witnesses testified that Leland was known to them and when the prosecutor introduced evidence that Petitioner had previously acquired oxycodone pills; and (3) comments made by the prosecutor at summation deprived Petitioner of a fair trial.  (*Id.* at 250–99.) The Appellate Division denied the appeal and affirmed Petitioner's conviction on July 26, 2017. (*Id.* at 345–46.)  Petitioner sought leave to appeal to the Court of Appeals in a counseled application in August 2017 (*id.* at 347–51), and the Court of Appeals denied that application on October 2, 2017 (*id.* at 390).  Petitioner sought reargument and reconsideration of both the Appellate Division's denial of his appeal and of the Court of Appeal's denial of leave to appeal (*see id.* at 353–84; 401–29; 437–39); the Court of Appeals denied Petitioner's last reconsideration motion on May 24, 2018 (*id.* at 441).

Petitioner also filed a *pro se* motion in the Appellate Division on August 18, 2017 seeking to re-argue the Appellate Division's conclusion that Leland's statement was inadmissible, noting that additional support for the veracity of the statement was to be found in a representation by Leland's attorney at a pre-trial court appearance that Leland had prescriptions for a number of controlled substances that might include oxycodone.  (*See id.* at 353–69.)  The statement by Leland's attorney was not mentioned in the prior briefing on Petitioner's direct appeal.  (*See id.* at

272–85.)  Petitioner claimed that this argument had been omitted from his appellate brief because his appellate counsel had inaccurately advised him that the minutes of the pre-trial appearance were outside the appellate record.  (*Id.* at 358–59, 380.)  The Appellate Division denied Petitioner's re-argument application on December 12, 2017 (*id.* at 432), and his attempt to appeal that decision was dismissed on March 16, 2018 as not appealable (*id.* at 436).

Petitioner also filed a second *pro se* 440 motion on October 8, 2018, alleging ineffective assistance of trial counsel on somewhat different grounds from those in his first 440 motion.  (R. at 442–520.)  The Queens County Supreme Court denied the motion on January 11, 2019 (*id.* at 602–05), and the Appellate Division denied leave to appeal on August 16, 2019 (*id.* at 646).

On November 9, 2018, Petitioner filed a *pro se coram nobis* motion in the Appellate Division, claiming that his appellate counsel was ineffective for failing to assert on direct appeal that trial counsel was ineffective for not allowing Petitioner to testify at trial.  (*Id.* at 647–75.)  The Appellate Division summarily denied the motion on May 1, 2019 (*id.* at 709), and the Court of Appeals denied leave to appeal on July 18, 2019 (*id.* at 714).

### B.  Instant Habeas Petition

Petitioner filed the instant habeas petition on September 18, 2019.  (Petition, Dkt. 1.) Respondent filed the record, as well as his response, on January 23, 2020.  (Dkts. 10, 11.)  On February 28, 2020, Petitioner filed a motion for discovery and inspection.  (Motion for Discovery and Inspection, Dkt. 14.)   On June 9, 2020, the Court directed Respondent to respond to Petitioner's motion, which response was filed on June 24, 2020.  (Dkt. 16.)  Petitioner filed an amended motion for discovery and inspection, accompanied by a memorandum of law, on July 6, 2020, seeking essentially the same documents, which are discussed *infra*.[7]  (*See* Dkts. 18, 19.)

---

[7] On July 6, 2020, Petitioner also filed a motion seeking compassionate release due to the COVID-19 pandemic.  (Dkt. 17.)  The Court addressed that motion separately from the instant

## LEGAL STANDARD

Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see also id.* at 301–02 (explaining that "the presumption that the federal claim was adjudicated on the merits may be rebutted" by either (1) "the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*)," or (2) "the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)").

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable

---

Petition and issued a Memorandum and Order construing it as a petition for release under 28 U.S.C. § 2241 and dismissing it without prejudice on September 14, 2020, for failure to exhaust. *Carter v. Fields*, No. 19-CV-5364 (PKC), 2020 WL 5517241, at *4 (E.D.N.Y. Sept. 14, 2020).

from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (internal quotation marks and citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotation marks and citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (observing that, where a state court adjudicates a federal constitutional claim on the merits, "we must apply AEDPA deference"). "An unreasonable application occurs when . . . 'the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (second alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

## DISCUSSION

Petitioner seeks federal habeas relief based on at least four explicit[8] grounds, namely: (1) that the trial court improperly precluded him from entering Leland's post-arrest written statement,

---

[8] As discussed further *infra*, the Court, construing Petitioner's motion papers liberally, also finds that Petitioner raises two additional habeas claims for ineffective assistance of counsel: that his trial counsel denied him his constitutional right to testify, and that his trial counsel failed to investigate Leland's counsel's representation that Leland had his own prescriptions for oxycodone. The Court incorporates these claims into its discussion of Petitioner's ineffective assistance claim.

which would have exculpated him; (2) that Officer Teta's arrest of Petitioner was based not on his observation of a drug transaction but on Petitioner's association with Leland, with whom Officer Teta was familiar from his prior law enforcement interactions; (3) that the prosecutor used the fact that Petitioner had filled a prescription two weeks prior to the day of his arrest, as well as on the day of his arrest, to suggest that Petitioner had sold the medication obtained with the earlier prescription, thus prejudicing Petitioner by suggesting prior bad acts; and (4) that Petitioner's counsel was ineffective because he failed to advise the trial court that Leland's attorney had mentioned at a pre-trial hearing that Leland might have a prescription for oxycodone, as corroboration of Leland's statement about being arrested with his own pills, when the court asked at trial if there was evidence supporting the statement's veracity.  (*See* Petition, Dkt. 1, at ECF 8–12.)  Petitioner also claims that his appellate counsel was ineffective for failing to raise Leland's attorney's statement about Leland's prescriptions in connection with the trial court's exclusion of Leland's post-arrest statement.  (*Id.* at ECF 12.)

The Court addresses grounds one and four first, as both arise at least in part from the exclusion of Leland's post-arrest statement at trial.

## I.     The Trial Court's Exclusion of Leland's Statement Was Not an Unreasonable Application of Clearly Established Federal Law

Petitioner first argues that his due process right to a fair trial was violated because the trial court excluded Leland's post-arrest statement about having a prescription for oxycodone as hearsay when it was, in fact, a statement against Leland's penal interest and thus admissible, thereby depriving Petitioner of his constitutional right to present a defense and to a fair trial.  (*See* Petition, Dkt. 1, at ECF 8.)

The statement in question from Leland reads as follows:

11

Tonight I was meeting a friend to talk about my birthday and a vehicle I am selling. I went around the block I ran into him I told him it was my birthday and I was trying to get some more pills. I had 150 of my own in my own bottle. Cops pulled up and strip [searched] the car my [prescription] was stolen when I crashed my car so I was texting looking for more for work. We were pulled out of the car they took my [prescription] bottle with my name and my pills and took me to the precinct. I had $560 cash looking for extra as I take 180 30mg oxycodone a month. I always look for pills because I have a horrible back problem along with shoulder knee and neck problems[.] I have doctors with MRIs[.] I have a serious back problem with no help and no insurance. I am a good kid no family and a kid on the way.

(R. at 116, 309.)

At trial, Petitioner's counsel sought to introduce this statement as a statement against Leland's penal interests that exculpated Petitioner. (*See* Tr., at ECF 205–15, 350–58.) The trial court asked Petitioner's counsel, *inter alia*, "what type of supportive evidence there [wa]s which would establish a reasonable possibility that the statement might be true." (*Id.* at ECF 352.) Counsel responded that a reasonable possibility was demonstrated by the statement's consistency with Petitioner's grand jury testimony, in which Petitioner had also stated that he met with Leland about buying a car from Leland (apparently without having had an opportunity to discuss alibis with Leland post-arrest) and also by the presence of "a car ad" at the scene with them. (*Id.* at ECF 353.)[9] However, Petitioner's counsel did not mention that Leland's counsel had stated at an initial court conference (in front of a different judge) that Leland had "medical doctor notes" and "prescriptions for a number of controlled substances," which might have included the oxycodone at issue. (*Id.* at ECF 7.)

The trial court excluded the statement as hearsay, finding that it was not subject to the exception for statements against penal interests because it was (1) not against Leland's penal

---

[9] It is not clear from the record whether there was in fact a car advertisement at the scene, as it is not otherwise mentioned in the trial transcript. (*See* Petitioner's Memorandum of Law in Support of his Direct Appeal, R. at 259 n.2 (stating that trial counsel noted that there "may be" an advertisement verifying that Leland was selling his car).)

interests, and, (2) even under the more lenient standard for hearsay statements exculpating the defendant under New York State law, there was no "reasonable possibility that the statement might be true" because it lacked "any meaningful independent proof tending to show that the statement [was] either trustworthy or reliable." (*Id.* at ECF 414–18.)

Petitioner raised the same issue on appeal.[10]   The Appellate Division affirmed his conviction, finding that:

> the post[-]arrest written statement of Leland was not shown to be against Leland's penal interest, as it was largely exculpatory. Therefore, the statement was properly excluded as inadmissible hearsay. Since the statement was properly excluded as inadmissible hearsay, the defendant's contention that exclusion of the statement violated his constitutional right to present a defense is without merit.

(R. at 345 (internal citations omitted).)

Because the Appellate Division adjudicated this claim on the merits, AEDPA deference is warranted. *See Eze*, 321 F.3d at 121.  The Court therefore "proceed[s] to consider whether the state court's decision was 'contrary to' or an 'unreasonable application of' this clearly established law." *Wade v. Mantello*, 333 F.3d 51, 58 (2d. Cir. 2003).

"The Constitution requires that criminal defendants be afforded 'a meaningful opportunity to present a complete defense.'" *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).  Although hearsay rules are a permissible limitation of this right, *see Rodriguez v. Artuz,* 123 F. App'x 428, 429 (2d Cir. 2005) (summary order) (citing *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)), they "may not be applied mechanistically to defeat the ends of justice" "where constitutional rights directly affecting the ascertainment of guilt are implicated," *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *see also Hawkins v. Costello*,

---

[10] As noted *supra*, Petitioner's counseled brief on direct appeal did not mention the statement by Leland's attorney that Leland might have a prescription for oxycodone as potential evidence to support the veracity of Leland's post-arrest statement.  (*See* R. at 272–85.)

460 F.3d 238, 243–44 (2d Cir. 2006) ("The Supreme Court . . . has found unconstitutional the rigid application of state evidentiary rules prohibiting presentation of exculpatory evidence." (internal quotation marks and citation omitted)).

Notably, the Supreme Court has not specified the set of circumstances in which a defendant "must be permitted to introduce evidence of potential third-party culpability [but instead] has found that such evidence must be admitted when, under the 'facts and circumstances' of the individual case, its exclusion deprived the defendant of a fair trial." *Wade*, 333 F.3d at 58 (quoting *Chambers*, 410 U.S. at 303). Thus, the Court cannot find that the Appellate Division's conclusion that the trial court properly excluded Leland's post-arrest statement is "contrary to . . . clearly established Federal law." *Penry*, 532 U.S. at 792.

This Court instead focuses on whether the Appellate Division's decision was an "unreasonable application" of federal law.

> In determining whether a state court's alleged evidentiary error deprived a petitioner of a fair trial, federal habeas courts engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under state law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial.

*Taylor v. Connelly*, 18 F. Supp. 3d 242, 257 (E.D.N.Y. 2014) (citing, *inter alia*, *Wade*, 333 F.3d at 59–60, 59 n.7). Even evidentiary rulings that are erroneous only warrant habeas relief where the petitioner "can show that the error deprived him of a *fundamentally fair* trial." *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (emphasis in original) (internal quotation marks and brackets omitted). The test for "fundamental fairness" is whether the excluded evidence, "evaluated in the context of the entire record, . . . create[d] a reasonable doubt [regarding petitioner's guilt] that did not otherwise exist." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (quoting *United States v. Agurs*, 427 U.S. 97, 112–13 (1976)).

The Court thus considers first whether the Appellate Division's decision was erroneous under New York state law. Generally, "[h]earsay is inadmissible in New York courts unless it falls within an exception to the rule." *Hawkins*, 460 F.3d at 245 (citing *People v. Huertas*, 553 N.E.2d 992 (1990)). However, New York law recognizes that "a defendant has a constitutional right to present a defense," *People v. Hayes*, 950 N.E.2d 118, 123 (N.Y. 2011), and that a "defendant's constitutional right to due process requires admission of hearsay evidence when [the] declarant has become unavailable to testify and the hearsay testimony is material, exculpatory and has sufficient indicia of reliability," *People v. Burns*, 844 N.E.2d 751 (N.Y. 2006) (emphasis in original) (internal quotation marks and citation omitted). New York law contains an exception to the hearsay rule for statements against a declarant's penal interest. *Hawkins*, 460 F.3d at 245 (citing *People v. Thomas*, 500 N.E.2d 293 (1986)). For a statement to be admissible as a declaration against penal interest, it must satisfy a four-part test:

> (1) the declarant must be unavailable to testify at the defendant's trial, (2) the declarant must have competent knowledge of the facts, (3) the declarant must have known at the time the statement was made that it was against his or her penal interest, and (4) there must be independent supporting proof indicating that the statement is trustworthy and reliable.

*People v. Simmons*, 84 A.D.3d 1120, 1121, (N.Y. App. Div. 2011) (citations omitted). Third-party "[d]eclarations which exculpate a defendant . . . are subject to a more lenient standard [than the standard for inculpatory statements]." *People v. Clinkscaleas*, 78 A.D.3d 1069, 1071 (N.Y. App. Div. 2010) (internal quotation marks and citations omitted). Additionally, New York courts recognize that "[d]epriving a defendant of the opportunity to offer into evidence another person's admission to the crime with which he or she has been charged, even though that admission may only be offered as a hearsay statement, may deny a defendant his or her fundamental right to

present a defense." *People v Gibian*, 907 N.Y.S.2d 226, 228 (App. Div. 2010) (citing, *inter alia*, *Chambers*, 410 U.S. at 302).

That Leland's post-arrest statement met the first two factors of the test for statements against penal interest is not in dispute. (*See* R. at 273–75.) Leland invoked his Fifth Amendment right not to testify (*see* Tr., at ECF 349–50), and his statement refers to his own involvement in the charged offenses. The issues in dispute, at trial and on appeal, were whether the statement was in fact against Leland's penal interests, and whether it was supported by independent proof. Petitioner contends that the statement was against Leland's penal interests because, in it, Leland admitted to possession of a controlled substance, the *sine qua non* of the drug offense with which he was charged. (Tr., at ECF 351; R. at 275–76, 349.) Similarly, Petitioner argued at trial and on appeal that the statement was supported by independent evidence, specifically that Leland and he had both separately stated post-arrest that they were meeting about a car that Leland was selling. (Tr., at ECF 353–54; R. at 282.) Despite these arguments, the trial court excluded the statement, finding that it was not supported by independent evidence (Tr., at ECF 416, 418) and was not against Leland's penal interests (*id.* at ECF 359). The Appellate Division did not explicitly address the corroboration prong, but found that the statement was properly excluded because it was "largely exculpatory" and thus inadmissible as a statement against penal interest. (R. at 345.)

The Court finds that the Appellate Division's decision on this issue is not clearly erroneous as a matter of state law. Nor, even assuming that the decision was in error, does the Court find it to have been an "unreasonable" application of federal law, i.e., one that fair-minded jurists could not disagree was erroneous. *See Washington*, 876 F.3d at 403 ("An unreasonable application occurs when . . . 'the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

16

fairminded disagreement[.]'" (second alteration in original) (quoting *Harrington*, 562 U.S. at 103)).  Like the Appellate Division, this Court views Leland's post-arrest statement as largely exculpatory and only ambiguously inculpatory.  Leland stated that, at the time of his arrest, "I had 150 of *my own* in my own bottle[;] . . . they took *my* perscription [sic] bottle with my name[11] and my pills and took me to the precinct."  (*See* R. at 116, 309.)  Possessing oxycodone with a prescription is not illegal.  *See* N.Y. Penal Law § 220.00 *et seq*.  Rather, it is Leland's statement, "I had $560 cash looking for extra as I take 180 30mg oxycodone a month.  I always look for pills because I have a horrible back problem along with shoulder knee and neck problems" (R. at 116, 309), that implicates him in illegal drug possession by suggesting that some or all of the oxycodone he had at the time of his arrest was unlawfully purchased either from Petitioner or others.  While Leland's post-arrest statement can be viewed as inculpating him in illegal drug possession, given his admission about intending to purchase more pills illicitly, it can certainly be read as exculpatory of Leland (and, by extension, of Petitioner) in that Leland ultimately denies that he purchased drugs from Petitioner by referring to the recovered pills as Leland's own.  If Leland's statement is not against his penal interests, then it fails to meet the four prongs of the test for the hearsay exception, and was properly excluded by the trial court.  *See Simmons*, 84 A.D.3d at 1121.

Based on its own analysis, the Court cannot find that the Appellate Division's ruling was erroneous under New York law.  Furthermore, even if the Court were to so find, and, recognizing the constitutional principle that a defendant not be deprived of exculpatory evidence even if it is hearsay, *see Chambers*, 410 U.S. at 302; *Gibian*, 76 A.D.3d at 585, the Court still would not find

---

[11] The Court, however, notes that the evidence at the trial showed that the prescription bottle recovered from Leland's pocket did not, in fact, have his name (or any name) on it, but had the label peeled off.  (*See* Tr., at ECF 593.)  While this evidence undercuts the reliability of Leland's claim that the pills he had on him at the time of his arrest were his and obtained by prescription, it does not render the statement itself inculpatory.

17

that the Appellate Division's decision was one about which fair-minded jurists could not help but agree was inconsistent with prior Supreme Court holdings. *See Harrington*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."). Thus, applying the deferential standard required by AEDPA, the Court denies Petitioner habeas relief on this ground. *See id.* at 101 ("Under AEDPA, a state court must be granted a deference and latitude that are not in operation in a case involving direct review[.]").

## II.   Petitioner's Ineffective Assistance of Trial Counsel Claims

Petitioner asserts one claim of ineffective assistance of counsel in his form Petition, relating to the trial court's exclusion of Leland's post-arrest statement. (*See* Petition, Dkt. 1, at ECF 8–13.)   In his Reply to Respondent's Opposition, however, Petitioner appears to raise several additional arguments as to why his trial counsel was ineffective. (*See* Petitioner's Reply in Opposition to Respondent's Response to his Petition ("Pt. Rep."), Dkt. 13.)[12]   Because the Court liberally construes the Petition to raise the strongest arguments possible in light of Petitioner's *pro se* status, *see Triestman*, 470 F.3d at 474, and because it appears that Petitioner raised the arguments asserted in his Reply in state court (*see* R. at 39–41, 139–40) and may have intended to incorporate them into his Petition by including his state-court briefing with his Petition (*see* Petition, Dkt. 1, at ECF 18–323), the Court addresses these additional arguments as part of its

---

[12] Presumably because these grounds are not listed in Petitioner's form Petition, they are not addressed by Respondent in his response to the Petition. (*See* Brief in Support of Respondent's Response to the Petition ("Resp. Br."), Dkt. 10-1.)

analysis of Petitioner's ineffective assistance of trial counsel claim.[13]   Specifically, Petitioner

claims (1) that, when the court asked at trial whether any independent evidence supported Leland's

post-arrest statement that he had 150 oxycodone pills on him at the time of the arrest pursuant to

a prescription, his trial counsel failed to inform the court that Leland's attorney had stated at an

earlier proceeding that Leland had medical issues for which he required various prescriptions,

possibly including one for oxycodone (*see* Petition, Dkt. 1, at ECF 12); (2) that trial counsel denied

Petitioner his right to testify at trial (*see* Pt. Rep., Dkt. 13, at ECF 13–15); and (3) that trial counsel

failed to take steps to verify whether Leland in fact had a prescription for oxycodone (*see id.* at

ECF 5–6).

### A.    Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court set forth a two-part test for evaluating

claims of ineffective assistance of counsel.   "To warrant relief, a defendant must demonstrate both

'that counsel's performance was deficient' and 'that the deficient performance prejudiced the

defense.'"   *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (footnote omitted) (quoting *Strickland

v. Washington*, 466 U.S. 668, 687 (1984)).   "Under *Strickland*'s first prong, counsel's conduct falls

to the level of being deficient if 'counsel made errors so serious that counsel was not functioning

---

[13] Generally, "before a federal court can consider a habeas application brought by a state prisoner, the habeas applicant must exhaust all of his state remedies."  *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (citing 28 U.S.C. § 2254(b)(1)(A)).  Unexhausted claims can be denied on the merits only if they are "unquestionably meritless."  *Ricks v. Superintendent of Marcy Corr. Facility*, No. 10-CV-0785 (MAT), 2012 WL 162608, at *2 (W.D.N.Y. Jan. 19, 2012) (quoting *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010)); *see also Warren v. Goord*, No. 06-CV-1423 (RRM), 2013 WL 1310465, at *11 (E.D.N.Y. Mar. 28, 2013) ("Though neither the Supreme Court nor the Second Circuit has established a standard to guide the exercise of this discretion, many courts in this Circuit have denied unexhausted claims upon a determination that they are patently frivolous." (collecting cases)); *Naranjo v. Filion*, No. 02-CV-5449 (WHP) (AJP), 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (collecting cases).  All of Petitioner's ineffective assistance claims appear to be exhausted.  (*See* R. at 34–36, 39–42, 52–56; *id.* at 139–144; *id.* at 180–183.)

as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Eze*, 321 F.3d at 125 (quoting *Strickland*, 466 U.S. at 687). Under the second prong, a counsel's conduct prejudiced the defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 123 (quoting *Strickland*, 466 U.S. at 688, 694).

"To prevail [on an ineffective-assistance claim], a defendant must establish both of *Strickland*'s prongs because, otherwise, 'it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the process unreliable, and the sentence or conviction should stand.'" *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 695 (2002)). Furthermore, a federal court's "scrutiny of counsel's performance must be 'highly deferential' because [the court] must apply 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 689).

### B.   Trial Counsel's Failure to Raise Leland's Counsel's Comments as Corroboration of Leland's Post-Arrest Statement

Petitioner contends that his trial counsel was ineffective because, when the trial court asked for supportive evidence that might tend to show the truthfulness of Leland's post-arrest statement, counsel neglected to note that Leland's counsel had stated at an initial court appearance in front of a different judge that Leland had a number of prescriptions, including potentially one for oxycodone. (*See* Tr., at ECF 352–53.) Specifically, Leland's attorney stated that:

> Leland has medical doctor notes[;] . . . [h]e has prescriptions for a number of controlled substances. . . . I have not verified them with the doctors, but . . . I don't know if the subject of the 220.03 currently in AP-2[14] is something covered by one

---

[14] The Court assumes that the reference to "220.3" is to N.Y. Penal Law § 220.03, criminal possession of a controlled substance in the seventh degree, which is a misdemeanor, *see* N.Y. Penal

> of the prescriptions. . . .  We have made a lot of progress with him understanding
> he has a number of medical issues which require him to take oxycodone.

(*Id.* at ECF 7–8.)  Petitioner argues that the trial court might have admitted the statement had his counsel mentioned Leland's attorney's comments, as the court ended up excluding Leland's post-arrest statement in part because Justice Lopresto found it insufficiently supported by independent evidence.  (*See* R. at 35–36, 100–01, 141.)  Had counsel raised the comments, Petitioner contends, Justice Lopresto would have admitted the statement and created a reasonable doubt regarding Petitioner's guilt.

The Court notes preliminarily that the state court decision on this claim is entitled to AEDPA deference.  Petitioner raised this claim in his first motion to vacate under NYCPL § 440.10.  (*See* R. at 35–36, 100–01.)  The motion court denied Petitioner's ineffective assistance of counsel petition without explicitly addressing this particular claim.  (*Id.* at 131.)  Petitioner raised the same argument in his appeal of the motion court's decision (*see id.* at 141) and the Appellate Division denied leave to appeal without opinion (*id.* at 166).  When a petitioner "squarely present[s]" a claim in his briefing, there is a strong presumption that the trial court denied that claim on the merits, in a determination that merits AEDPA deference.  *Golb v. Att'y Gen. of the State of N.Y.*, 870 F.3d 89, 97–98 (2d Cir. 2017) (citing *Johnson v. Williams*, 568 U.S. 289, 306 (2013)).  Here, Petitioner raised his argument before both the trial court and Appellate Division, and thus AEDPA deference applies.

Considering Petitioner's claim in light of this deference, the Court finds that Petitioner has failed to show that he was prejudiced by his counsel's failure to raise Leland's attorney's comments, even assuming *arguendo* that he could show that his trial counsel's performance was

---

Law § 220.03, and that "AP-2" is to the "All Purpose - Part 2" division in New York Supreme Court.

deficient to a degree that meets the first prong of *Strickland*. *See Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018) ("The *Strickland* Court also declared, however, that 'there is no reason for a court to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant.'" (alterations omitted) (citing *Strickland*, 466 U.S. at 697)), *cert. denied*, 139 S. Ct. 1608 (2019). First, it is far from clear that the comments by Leland's counsel would have been sufficient independent evidence of the truthfulness of Leland's post-arrest statement to support its admission, even under the more lenient standard for hearsay statements exculpating the defendant. Even if Leland had a valid prescription for the type of pills at issue, which his attorney only indicated that he *might*, the existence of such a prescription would not necessarily mean that the pills recovered from Leland on September 4, 2012 were pills he obtained with that prescription. Indeed, though Leland wrote in his statement that he had a pill bottle with his name on it when he was arrested, the pill bottle recovered at the scene had no such label. (*See* Tr., at ECF 593.)

Second, while trial counsel failed to provide information that would have supported the argument that Leland's statement met the reliability prong of the test for statements against penal interest, the trial court ultimately found, and the Appellate Division affirmed, that the statement was also inadmissible on other grounds: namely, that it was actually exculpatory and not against Leland's penal interests. (R. at 345.) Thus, trial counsel's failure to raise the statement at issue did not prejudice Petitioner, because the statement was inadmissible as an exculpatory statement even with additional independent evidence to support it.

Lastly, even if Leland's statement were admissible, Petitioner would still have had to contend with the substantial evidence against him, including Officer Teta's testimony that he had

seen Petitioner hand Leland the pills and pocket cash given to him by Leland (*see* Tr., at ECF 588–90), and the fact that Petitioner had filled a prescription for 150 pills of oxycodone earlier that day for which he paid cash (*id.* at ECF 509–14, 520–21).  Petitioner has not demonstrated a reasonable probability that "the result of the [trial] would have been different," i.e., that he would not have been convicted, if Leland's post-arrest statement had been admitted at trial.  *Eze*, 321 F.3d at 123 (quoting *Strickland*, 466 U.S. at 688, 694).

For these reasons, the Court cannot find the state court's determination that Petitioner was not prejudiced by this failure of his trial counsel an unreasonable application of *Strickland*.  *See Harrington*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. . . .  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.").

## C.    Petitioner's Right to Testify

Petitioner also claims in his Reply and in his state court briefing that his trial counsel denied him his right to testify.  Out of an abundance of caution, the Court reviews this claim *de novo*.[15] (*See* Pt. Rep., Dkt. 13, at ECF 13–15; R. at 39–42, 92–96, 139–140.)

---

[15] The Court notes that, based upon its review of the proceedings in the state court, it is unclear whether this issue was decided on the merits by that court.  Generally, a judgment decided by the state court on non-substantive grounds does not receive AEDPA deference on federal habeas review, although review may be precluded if the state court decision "rests on a state law ground [including a procedural ground] that is independent of the federal question and adequate to support the judgment."  *See Cox v. Miller*, 296 F.3d 89, 100 (2d Cir. 2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  In the trial court's decision denying Petitioner's motion to vacate his conviction, the court stated that "[Petitioner's] claim that he wished to testify and his attorney never addressed that issue to the Court is contradicted by the Court record.  Defendant needed to raise th[is] issue[] in his direct appeal."  (R. at 131 (citation omitted).)  The Appellate Division denied leave to appeal the trial court's decision without opinion.  (*Id.* at 166.)  Moreover, given that Petitioner's motion was a "mixed" motion involving issues both on and outside the record, it is not clear whether the trial court was correct in holding that this claim should have been raised on direct appeal rather than a motion to vacate.  *See, e.g., Contant v. Sabol*, 987 F. Supp. 2d 323, 351 (S.D.N.Y. 2013) (finding the independent state procedural grounds inadequate to bar

A petitioner's claim "that he was denied the right to testify is considered a 'component' of his ineffective assistance of counsel claim, and is therefore reviewed under the two-part *Strickland* standard." *Guidice v. United States*, No. 03-CV-4983 (SJ), 2007 WL 1987746, at *14 (E.D.N.Y. July 3, 2007) (citing *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997)). "A petitioner can satisfy the first *Strickland* prong by demonstrating that trial counsel failed to inform him either of his right to testify or of his right to make the ultimate decision whether to testify." *Hayward v. Brown*, No. 09-CV-6495 (LAK) (AJP), 2010 WL 2629037, at *23 (S.D.N.Y. July 1, 2010) (citations omitted). "[C]ourts may presume, unless [the petitioner] can overcome the presumption, that defense counsel was effective and did not fail to advise the [the petitioner] of his right to testify." *Guidice*, 2007 WL 1987746, at *14 (citing *Strickland*, 466 U.S. at 689); *Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001). "A petitioner's unsupported assertions that defense counsel failed to inform him of his right to testify are insufficient to meet *Strickland's* requirements." *Hayward*, 2010 WL 2629037, at *22 (citing, *inter alia*, *United States v. Montilla*, 85 F. App'x 227, 230 (2d Cir. 2003) (summary order)). Here, Petitioner's claim that he was denied his right to testify is supported only by his own assertions regarding his conversations with trial counsel and his outbursts on the record, which occurred both after the close of evidence and after summations (*see* Tr., at ECF 818 ("Excuse me, your honor. Why w[eren't] any of my medical records put into evidence?")), and after the final jury charge (*see id.* at ECF 846–47 ("Your Honor, I would like to testify, as to the bulges of the disk in my back and the screw in my foot.")). Petitioner did not secure any affidavits

---

federal review where the trial court held that petitioner's ineffective assistance claim, which he raised on a 440.10 motion, was procedurally barred because petitioner could have brought the claim on direct appeal and did not, when in fact the claim concerned facts outside the record and so could not have been brought on direct appeal). "Under these circumstances, rather than unravel the various procedural issues, this Court prefers to address the more straightforward questions presented by the merits of [Petitioner's] petition." *Mallet v. Miller*, 432 F. Supp. 2d 366, 376 n.7 (S.D.N.Y. 2006).

from his trial counsel in support of this claim.  Nor does Petitioner even allege that his counsel failed to inform of his right to testify, but rather that they disagreed as to whether he *should* testify. Respondent, however, included in his briefing below an affidavit from a prosecutor describing her conversation with Petitioner's trial counsel in which trial counsel represented that he and Petitioner had agreed that Petitioner should not testify at trial, given that Petitioner's testimony would open the door to information about Petitioner's prior convictions.  (*See* R. at 70.)

While the Court ordinarily would be "reluctant to dismiss Petitioner's claim . . . [without a] sworn statement from [Petitioner's counsel] contesting [Petitioner's] version of events," *Mallet*, 432 F. Supp. 2d at 380 n.9,[16] the Court finds it unnecessary to do so here because Petitioner fails to demonstrate that there is a reasonable probability that his proffered testimony would have resulted in his acquittal, and thus he fails to meet his burden under the second prong of *Strickland*. *See Eze*, 321 F.3d at 123.  Had Petitioner testified, he would have been exposed to attacks on his credibility based on his prior convictions, as the trial court ruled during a pre-trial hearing that the prosecution could introduce Petitioner's prior conviction for second-degree murder if he took the stand.  (Tr., at ECF 103.)  This cross-examination could easily have outweighed any benefit from his testimony.  *See*, *e.g.*, *Al Kassar v. United States*, No. 07-CR-354 (JSR), 2014 WL 1378772, at *11 (S.D.N.Y. Apr. 8, 2014) (finding that petitioner's testimony "quite possibly could have potentially harmed, rather than aided, his defense" where testimony would have exposed petitioner

---

[16] Contrary to Petitioner's arguments (*see* Pt. Rep., Dkt. 13, at ECF 14), the Court does not find the fact that trial counsel made remarks to the jury indicating that he (counsel) was responsible for the decision as to whether Petitioner would testify to be particularly probative of Petitioner's claim.  (*See*, *e.g.*, Tr., at ECF 269 ("[T]here is a good chance I will not have Mr. Carter testify. We don't have to testify.  If I don't have him testify, it's my decision.").)  These remarks could have simply reflected a strategy for jury engagement that was expressed in regrettably loose, colloquial language.

to the admission of information about his history of arms dealing) (collecting cases), *report and recommendation adopted*, 2014 WL 3417643 (S.D.N.Y. July 14, 2014).

Additionally, Petitioner does not demonstrate a "reasonable probability" that the testimony he sought to enter would have changed the result. *Eze*, 321 F.3d at 123. Petitioner's alleged goals in seeking to testify were to (1) admit and corroborate Leland's post-arrest statement (that the pills recovered from the scene belonged to Leland, and that he was meeting with Leland about buying a car), and (2) introduce evidence of his own health issues, so as to show that he was legitimately prescribed opioids. (*See* Pt. Rep., Dkt. 13, at ECF 13–14.) As to the first issue, Petitioner clearly would not have been permitted to testify about Leland's post-arrest statement, as that would have been inadmissible hearsay. As the Appellate Division held (R. at 345), Leland's statement was inadmissible not because of the absence of independent supporting evidence, but because it was not against Leland's penal interest. The Court does not agree with the trial court's rumination that Leland's statement "*might* fit if [Petitioner] testified in this case, . . . and if [Petitioner] testifies in this trial in the same manner [as in the grand jury] I *could* see it being supportive and there being a reasonable possibility that the statement might be true, and therefore subjecting the admissibility of the statement to a more lenient statement." (*See* Tr., at ECF 358 (emphasis added).) Because the statement was not against Leland's penal interests, it would not have become admissible based on Petitioner's testimony at trial. As to the second issue, the Court cannot see how evidence that Petitioner was legitimately prescribed opioids would have undermined the jury's determination that he sold oxycodone to Leland or that Petitioner possessed it with intent to sell the drug; if anything, it would have only served to confirm that Petitioner possessed oxycodone that day and to provide an explanation for how Petitioner obtained the oxycodone that he allegedly sold to Leland. "In light of all these factors, there is no reasonable probability that the verdict would have

been different had [Petitioner] testified.  Because his failure to testify did not prejudice him, [Petitioner] fails to satisfy the second *Strickland* prong and this ineffective assistance claim should also be rejected." *Al Kassar*, 2014 WL 1378772, at *11 (internal quotation marks and citation omitted).

### D.    Trial Counsel's Failure to Investigate

The Court next considers Petitioner's claim that his trial counsel was ineffective for failing to take steps to verify whether Leland in fact had a prescription for oxycodone.  As a factual matter, it does not appear that Petitioner's trial counsel followed up on Leland's counsel's statement to investigate whether Leland in fact had a prescription for the type of pills recovered in this case, and/or whether he had filled such a prescription recently.  (*See* State's Memorandum of Law in Opposition to Petitioner's Motion to Vacate His Conviction, R. at 80 (noting that Petitioner's trial counsel had informed counsel for the state that he "never had any [] conversation with [Petitioner with regard to entering Leland's medical records], and even if he had, that kind of evidence would not have been helpful in crafting a defense").)  It appears that trial counsel's efforts were instead focused on discrediting the police evidence at trial.  (*Id.*)

"Courts have found that a trial counsel's failure to investigate potentially exculpatory evidence, in the absence of a reasonable explanation, falls below the constitutional standard of effective representation required by *Strickland*."  *Espinal v. Bennett*, 588 F. Supp. 2d 388, 401 (E.D.N.Y. 2008) (collecting cases), *aff'd*, 342 F. App'x 711 (2d Cir. 2009). "Defense counsel, however, has a duty only to make reasonable investigations, or to make 'a reasonable decision that makes particular investigations unnecessary.'"  *Windley v. Lee*, No. 11-CV-1275 (DLC), 2013 WL 2350431, at *37 (S.D.N.Y. May 16, 2013) (quoting *Strickland*, 466 U.S. at 691).  Counsel is not required to "investigate comprehensively every lead or possible defense," *Greiner v. Wells*, 417

F.3d 305, 321 (2d Cir. 2005) (citations omitted), but can choose to forego a potentially viable line of investigation if its pursuit comes with "significant potential downside," *Sacco v. Cooksey*, 214 F.3d 270, 275 (2d Cir. 2000), or if counsel has "good reason to think further investigation would be a waste," *Rompilla v. Beard*, 545 U.S. 374, 383 (2005) (citations omitted). "The decision not to investigate 'must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Windley*, 2013 WL 2350431, at *37 (quoting *Strickland*, 466 U.S. at 691).

The Court notes first that Petitioner's claim regarding his trial counsel's failure to investigate was rejected by the trial court in connection with Petitioner's 440 motion. (*See* R., at 127, 131–32.) The Appellate Division and Court of Appeals both denied permission to appeal the trial court's decision. (*Id.* at 166, 192.) Thus, the state court's determination on this claim is entitled to AEDPA deference. *See Johnson*, 568 U.S. at 306.

The Court finds that, according the appropriate deference, Petitioner has not demonstrated that he was prejudiced by his counsel's failure to investigate, even assuming *arguendo* that such failure was in error. Information that Petitioner's counsel might have uncovered in an investigation, such as Leland having a prescription for oxycodone, would not itself have been sufficient to exculpate Petitioner, as Leland might both have had a prescription for oxycodone and nonetheless sought to purchase additional pills from Petitioner (as Leland admitted, in substance, in his post-arrest statement). Of course, had Petitioner's counsel investigated Leland's prescriptions and discovered that Leland had recently filled a prescription for 150 of the same pills that he was arrested with, such evidence could have been used to argue that Petitioner did not sell any pills to Leland the day of Petitioner's arrest and that all of the pills recovered were from Leland's prescription. However, given that Officer Teta testified about witnessing Petitioner give

28

Leland the pills in exchange for cash (Tr., at ECF 588–90),[17] that Petitioner had himself filled a prescription for the same type and number of pills the same day (*id.* at ECF 509–14, 520–21), that the pill bottle recovered from Leland at the scene had the label peeled off (*id.* at ECF 593), and that $1,700 in cash was recovered from Petitioner at the scene (*id.* at ECF 591), the Court cannot find that the admission of such evidence, if it existed, would have changed the result.  *Eze*, 321 F.3d at 123.  Thus, the Court finds that the state court's determination that trial counsel was not ineffective was neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts in light of the evidence presented.  *See Harrington*, 562 U.S. at 101.

### E.	Petitioner's Ineffective Assistance of Appellate Counsel Claim

Petitioner also appears to raise an ineffective assistance of appellate counsel claim, in which he contends (1) that appellate counsel informed him that the transcript[18] of the preliminary court hearing at which Leland's counsel represented that Leland might have a prescription for oxycodone was outside the record and thus that information from that hearing could not be raised

---

[17] The Court recognizes that evidence of Leland's prescription for oxycodone, if any, could also have been used to challenge the credibility or accuracy of Officer Teta's account of the transaction between Petitioner and Leland.  However, given the tentative nature of the conclusions to be drawn from this putative evidence, discussed *supra*, and the fact that it is exclusively the province of the jury—and not reviewing courts—to assess witness credibility, the Court does not find that this potential use of the prescription evidence, either alone or in combination with other potential uses of the evidence, would have changed the result of the trial.

[18] The letter from appellate counsel refers not to the transcript of the pre-trial hearing but to the "minutes" from the hearing.  While Respondent contends that it is not clear from appellate counsel's letter that the "minutes" refer to the transcript of the hearing, as counsel would likely have known that those minutes were part of the record and may have been referring to other notes from the meeting (*see* Resp. Br., Dkt. 10-1, at 34–35), the Court notes that Petitioner's briefing on direct appeal does not refer to the statement by Leland's counsel, lending credence to Petitioner's interpretation (*see* R. at 272–85).

on direct appeal[19] (*see* R. at 357–59 (referring to *id.* at 380 ("Now that I have a better understanding of the significance of the March 27, 2013, minutes, I have decided to order them.  Please note, however, that these minutes concern matters outside of the record on appeal, and our office is assigned to represent you on only the direct appeal of your conviction."))); and (2) that appellate counsel erred in informing Petitioner that he could not raise his claim regarding the denial of his right to testify on direct appeal (*see id.* at 383 ("I cannot argue on direct appeal that you were denied your right to testify. . . .  How this came about concerns matters outside of the record (such as conversations between you and your attorney) and cannot be litigated on appeal based only on your protests later on.")).  (*See* Pt. Rep., Dkt. 13, at ECF 15–19.)

"Th[e *Strickland*] test applies in the appellate context as well as at trial."  *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (citing, *inter alia*, *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).  "[Appellate] counsel has no duty to raise every non-frivolous issue that could be raised.  Nevertheless, appellate counsel's performance must meet prevailing professional norms."  *Id.* (internal citations omitted).  "Thus, a petitioner asserting a claim of ineffective assistance of appellate counsel must show both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal and that, but for counsel's malfeasance, there was a reasonable probability that defendant's appeal would have been successful."  *Hicks v. Ercole*, No. 09-CV-2531 (AJN), 2015 WL 1266800, at *21 (S.D.N.Y. Mar. 18, 2015) (citations omitted).

To the extent Petitioner contends that his appellate counsel was ineffective for misrepresenting or misunderstanding the nature of the pre-trial hearing transcript and thus failing to raise this claim on appeal, the Court finds that counsel's conduct does not meet the *Strickland*

---

[19] The Court notes that this claim is unexhausted.  Here, because the Court finds that Petitioner was not prejudiced by appellate counsel's error, it nonetheless denies the claim on the merits.  *See Ricks*, 2012 WL 162608, at *2.

prejudice prong because, as discussed above, Leland's statement would have nonetheless remained inadmissible on other grounds. The same rationale applies to Petitioner's claim against appellate counsel regarding her advice to Petitioner that he could not raise on direct appeal counsel's failure to let him testify. Because the Court found above that Petitioner was not prejudiced by his failure to testify, his claim on this ground fails.[20]

## III.   Petitioner's Fourth Amendment Claim

Petitioner also seeks relief on the grounds that he was unlawfully arrested and that the motion court improperly denied his motion to suppress the fruits of that arrest. (Petition, Dkt. 1, at ECF 9–10.) Specifically, he contends that he was arrested not because Officer Teta in fact observed him hand Leland a bottle, but rather because of a "hunch" Officer Teta had based on his previous interactions with Leland. (*Id.*) Petitioner also contends that, even if Officer Teta did believe that he saw Petitioner and Leland exchange a pill bottle and money, he should have inquired about the exchange instead of summarily arresting them both. (*Id.*)

Petitioner's claims are barred by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976), in which the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Id.* at 481–82 (footnote omitted). This Circuit has concluded that

---

[20] Though the Court finds that Petitioner has not established prejudice on this claim, the Court notes that Petitioner was told by appellate counsel that he could not raise his claim that he was denied his right to testify on direct appeal (R. at 383), only to then have that claim denied by the trial court when Petitioner raised it, as advised, on a 440 motion, because the trial court found that the claim should have been raised on direct appeal (*id.* at 131). The Court is sympathetic to Petitioner's frustration with the inconsistent information he received, especially as it appears that the trial court erred, given the mixed nature of the claim. *See Contant*, 987 F. Supp. 2d at 351.

review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.

*Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citations omitted).

As to the first prong, the Second Circuit has noted that "federal courts have approved New York's procedure for litigating Fourth Amendment claims." *Id.* at 70 n.1 (internal quotation marks and citation omitted). Thus, Petitioner's Fourth Amendment claims would only be reviewable under the second prong. "[I]n order to establish an unconscionable breakdown in the process, a petitioner must show that the state courts failed to conduct a reasoned method of inquiry into relevant questions of fact and law." *House v. Miller*, No. 02-CV-5379 (JBW), 2003 WL 23198788, at *13 (E.D.N.Y. Oct. 27, 2003) (internal quotations marks and citation omitted).

In this case, Petitioner had a full opportunity to litigate his Fourth Amendment claims at the pre-trial *Dunaway/Mapp/Huntley* hearing. (*See* Tr., at ECF 10–67.) The fact that the state appellate court did not specifically address Petitioner's Fourth Amendment arguments does not demonstrate an unconscionable breakdown in the process. *See House*, 2003 WL 23198788, at *13 ("An appellate court's summary affirmance, without discussing the Fourth Amendment issue, does not suggest an unconscionable breakdown." (internal quotation marks and citation omitted)). The Court therefore concludes that there was no breakdown in the state court process, so as to overcome the bar to federal habeas review established by *Stone*. *See Small v. Artus*, No. 07-CV-1117 (SJF), 2009 WL 2707319, at *13–14 (E.D.N.Y. Aug. 20, 2009) (holding that petitioner "failed to show . . . an unconscionable breakdown" where "[t]he suppression court entertained briefs concerning the suppression hearing and denied petitioner's request for a hearing only after considering the factual and legal claims asserted by the parties"); *Salcedo v. Smith*, No. 05-CV-

3497 (JGK), 2006 WL 1644700, at *4 (S.D.N.Y. June 13, 2006) ("The petitioner has failed to demonstrate an unconscionable breakdown in the corrective process, showing only that he disagreed with the ultimate outcome of the Fourth Amendment litigation in the state courts." (internal quotation marks and citation omitted)).

## IV.   Introduction of Evidence Regarding Petitioner's Earlier-Filled Prescription

Petitioner also contends that he did not receive a fair trial because he was prejudiced by the prosecutor's use of the fact that Petitioner had filled a prescription for opioids two weeks prior to the day of his arrest, as well as on the day of his arrest.  (*See* Petition, Dkt. 1, at ECF 11.)

At trial, the court permitted the prosecutor to introduce evidence that Petitioner had filled a prescription for 150 pills of oxycodone on August 21, 2012, approximately two weeks before his arrest, in addition to the prescription for 150 pills he filled on the day of his transaction with Leland. (*See* Tr., at ECF 506–15.)  Over the defense's objection, the trial court held that the evidence "would be extremely probative in proving the People's case and would outweigh the interest of prejudicing the defendant."  (*Id.* at ECF 104.)   In his summation, the prosecutor stated that Petitioner "took the two prescriptions, and he profited from them."  (*Id.* at ECF 801.)

Petitioner's attorneys argued both at trial and on direct appeal that the prosecutor invited the jury to speculate that Petitioner had sold the pills from the earlier-filled prescription.  (R. at 287–93 (citing Tr., at ECF 801).)  Petitioner also argued that the evidence was not admitted for any relevant purpose, as he did not dispute intent at trial.  (*See id.*)  Respondent contends, as the government did at Petitioner's trial and on appeal, that the information about the earlier prescription was admitted as probative of Petitioner's intent to sell the pills he bought that day while keeping the earlier prescription, which he paid for with Medicare, for his personal use. (Resp. Br., Dkt. 10-1, at 35–39.)  The Appellate Division did not explicitly address this issue in its

decision, but simply found that "[Petitioner's] remaining contentions [beyond those about Leland's post-arrest statement] are without merit."  (R. at 345–46.)[21]

As addressed *supra*, "[a] habeas petitioner asserting a claim based on an alleged erroneous state court evidentiary ruling must demonstrate that the evidentiary error violated an identifiable constitutional right and was 'so extremely unfair that its admission violates fundamental conceptions of justice.'"  *Delancey v. Lee*, No. 15-CV-891 (RRM) (CLP), 2019 WL 9051134, at *17 (E.D.N.Y. Nov. 4, 2019) (quoting *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998)), *report and recommendation adopted*, 2020 WL 3084285 (E.D.N.Y. June 10, 2020).  "The decision to admit evidence of a criminal defendant's uncharged crimes or bad acts under *Molineux*[22] constitutes an evidentiary ruling based on state law."  *Id.* (internal quotation marks and citation omitted).  Thus, a state court's *Molineux* ruling is generally not cognizable on habeas review.  *See Roldan v. Artuz*, 78 F. Supp. 2d 260, 276–77 (S.D.N.Y. 2000).  "A habeas claim asserting a right to relief on *Molineux* grounds must rise to the level of constitutional violation, because *Molineux* deals with state law evidentiary issues."  *Delancey*, 2019 WL 9051134, at *17 (citation omitted).  The first step in the analysis of a *Molineux* claim is "to determine whether the state court decision violated a state evidentiary rule; if the state court properly applied a presumptively constitutional state evidentiary rule, then there can be no constitutional violation."  *Id.* (citations omitted).  At

---

[21] While this issue was not explicitly addressed by the Appellate Division, it was raised at length in Petitioner's appellate briefing (*see* R. at 286–98), and thus AEDPA deference to the state court determination is warranted.  *See Johnson*, 568 U.S. at 306.

[22] In *People v. Molineux*, 61 N.E. 286 (N.Y. 1901), the New York Court of Appeals held that evidence of crimes, wrongs or other acts is not admissible to prove that the defendant had a propensity to engage in wrongful acts or that he acted in conformity with the prior conduct on any particular occasion, but may be admissible if it is more probative than prejudicial and offered to prove motive, opportunity, intent, preparation, absence of mistake or accident, conduct that is inextricably interwoven with the charged acts, or to provide necessary background information or complete the narrative.  *See Delancey*, 2019 WL 9051134, at *1 n.3.

the second step, the court "determine[s] whether the state evidentiary error violated an identifiable constitutional right.  While the introduction of unfairly prejudicial evidence against a defendant in a criminal trial is contrary to both state law and federal law, not all erroneous admissions of such evidence are errors of constitutional dimension."  *Id.* (internal quotation marks and citation omitted).

The Court finds that admission of this evidence was neither a state evidentiary error nor a constitutional violation.  As an initial matter, the Court agrees with Respondent that the admitted evidence does not relate to or show a prior "bad act," as it did not involve a prior crime, but simply a legal prior purchase of pills.[23]   However, even assuming the evidence regarding the prior prescription were evidence of a prior bad act, evidence of prior bad acts is admissible to prove intent under New York law.  *See Delancey*, 2019 WL 9051134, at *18 (citing *Molineux*, 61 N.E. 286).  "[W]here the evidence of prior, uncharged criminal conduct has a bearing upon a material aspect of the People's case other than the accused's general propensity toward criminality[,] . . . the probative value of the evidence justifie[s] its admission, notwithstanding the potential for incidental prejudice.'"  *Id.* (quoting *People v. Lee*, 726 N.Y.S.2d 284 (App. Div. 2001)).  Here, the state trial and appellate courts reasonably found that the evidence of Petitioner's prior prescription purchases was probative of his intent to sell.

As Petitioner has not established a state law error, he also fails to establish that his constitutional rights were violated as a result of the admission of this evidence by the trial court. *See id.* at *19.  Moreover, even assuming, *arguendo*, that the trial court's admission of the evidence

---

[23] Nor does the Court read the prosecutor's statement that Petitioner "profited" from the two prescriptions to suggest that Petitioner sold the earlier prescription; instead, it appears the prosecutor was arguing that Petitioner "profited" by selling his second prescription while using his first.  (*See* Tr., at ECF 801.)

was erroneous, the Court notes that the Supreme Court has not definitively stated that admission of prior bad acts constitutes a constitutional violation. *See Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); ! *Delancey*, 2019 WL 9051134, at \*19 (collecting cases in which lower federal courts following *Estelle* have rejected claims based on the argument that introduction of evidence of uncharged crimes violates a defendant's due process rights).  In order to demonstrate that erroneous admission of prejudicial evidence denied Petitioner due process, he must show that the evidence, "viewed objectively in light of the entire record" must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Id.* (quoting *Dunnigan*, 137 F.3d at 125).  Petitioner has failed to demonstrate that a reasonable doubt would have existed but for the admission of this evidence regarding his purchases of prescribed oxycodone.  Therefore, finding that the Appellate Division's rejection of this claim was not an objectively unreasonable application of existing federal constitutional principles, the Court denies this claim.

## V.   Petitioner's Motions for Discovery and Appointment of Counsel

The Court denies Petitioner's motion for discovery, in which he seeks to inspect, *inter alia*, medical letters from Leland's attorney regarding Leland's medical condition and prescriptions, copies of his prescriptions and information regarding who had prescribed them and where they were filled, and Leland's prior criminal record and plea minutes.  (*See* Motion for Discovery and Inspection, Dkt. 14.)  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also Pizzuti v. United States*, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) ("A petitioner bears a

heavy burden in establishing a right to discovery." (internal quotation marks and citation omitted)). A court may authorize discovery under Rule 6 of the Rules Governing Section 2254 cases "for good cause."  28 U.S.C. § 2254, Rule 6(a).  To establish good cause, the petitioner must present specific allegations that provide "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy*, 520 U.S. at 908–09 (alteration in original) (quoting *Harris v. Nelson,* 394 U.S. 286, 300 (1969)).

Here, Petitioner seeks relief on the grounds that the trial court erred in not admitting Leland's statement, and that his counsel was ineffective for not properly investigating Leland's prescription history, so as to support the argument in favor of the statement's admission.  Because both grounds concern the conduct of Petitioner's attorneys and of the trial court based on the information they had available to them at the time, additional discovery would be irrelevant to the decision on the merits.  *See Jackson v. Conway*, 763 F.3d 115, 135 (2d Cir. 2014) ("[F]ederal review under either prong of § 2254(d)(1) 'is limited to the record that was before the state court that adjudicated the claim on the merits.'  Thus, 'evidence introduced in federal court has no bearing on § 2254(d)(1) review.'" (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011)).  Furthermore, in denying habeas relief on all of Petitioner's claims relating to Leland's post-arrest statement, the Court has found that, even assuming that this evidence existed and had been obtained by Petitioner's trial counsel, it would not have changed the outcome of his case.

The Court also denies Petitioner's motion to appoint counsel.  "[T]here is no constitutional right to representation by counsel in habeas corpus proceedings."  *United States v. Yousef*, 395 F.3d 76, 77 (2d Cir. 2005) (*per curiam*) (internal quotations marks and citation omitted); *see also Wright v. West*, 505 U.S. 277, 293 (1992) (same).  A district court may appoint counsel to a financially eligible habeas petitioner when the court determines that the interests of justice so

require.  *See* 18 U.S.C. § 3006A(a)(2)(B).  While a court must appoint an attorney if necessary for effective discovery and if an evidentiary hearing is warranted, appointment is otherwise discretionary.  *See Villafane v. Artus*, No. 09-CV-5545 (SJF), 2011 WL 6835029, at *27 (E.D.N.Y. Nov. 17, 2011).  When deciding whether to assign counsel to an indigent civil litigant under 28 U.S.C. § 1915(e)(1), the threshold inquiry is whether there is "some likelihood of merit" to the litigant's position.  *Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) (internal quotation marks and citation omitted).  If the claim is of substance, the Court should consider:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986).  Here, the Court finds that appointment of counsel is not warranted, as there is no discovery or investigation warranted, and Petitioner has adequately and competently set forth his claims.  The Court has also found that Petitioner's claims lack merit, which further undermines his claim for appointed counsel. Accordingly, his request for appointment of counsel is denied.

*     *     *

While the Court questions the ends being served by Petitioner's continued incarceration for selling a single bottle of oxycodone pills[24]—given Petitioner's age, health concerns, and own opioid addiction issues, and the fact that he has already served eight years out of a ten-year sentence—the Court is bound to follow the law, and, having found that Petitioner's state court

---

[24] As other courts in this district have noted, "[t]he high correlation between prescription painkillers and heroin use—which often leads to incarceration—is directly attributable to the wide availability and over-prescription of opiate medications."  *United States v. Scott*, 239 F. Supp. 3d 629, 635 (E.D.N.Y. 2017).

conviction does not violate the Constitution or any established federal law, the Court is unable to grant Petitioner relief.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.  Petitioner's motions for discovery and appointment of counsel are also denied.  Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen. of States of N.Y. & Penn.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner had not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks, ellipsis, and citation omitted)).  Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2020
      Brooklyn, New York

39